HEARD NOVEMBER TERM, 1875.

## ROACH *vs.* IVEY.

On the dissolution of a partnership and the formation of a new firm by taking in a new member, a statement of the assets and liabilities of the old firm was made, showing a considerable excess of assets over liabilities, and the old partners were credited on the books of the new firm with their shares of the excess. The new firm was shortly afterwards dissolved, and A, one of the old partners, brought an action to recover his share of the excess: *Held,* Upon the proofs, which showed that the statement was erroneous, that it was a mere approximate estimate of the assets and liabilities, and that A could not recover thereon, and that he could only recover upon an account to be taken showing a balance in his favor.

BEFORE MACKEY, J., AT YORK, APRIL TERM, 1875.

This was an action by John J. Roach against James M. Ivey, Allen Jones and R. Thomas May, to recover the sum of $3,077.66, alleged to be due by the defendants to the plantiff upon a state of facts substantially the same as that set forth in the case herein stated.

The case is as follows:

On the 10th August, 1869, the plaintiff formed a mercantile copartnership with James M. Ivey and R. Thomas May.

On the 1st of January, 1871, Allen M. Jones was taken into the firm as a new partner. An estimate was then formed of the assets and liabilities of the firm and a statement thereof made, which is as follows:

Jan. 1, 1871. Amount of stock.................................$20,000 00
                    Amount of accounts........................... 15,180 64
                    Amount of notes...............................  3,294 00
                                                                    —————————
                                                                    $38,474 64
                    Liabilities.......................$17,000 00
                    Credit J. M. White, half
                            profits on cotton...........  1,000 00—$18,000 00
                                                                    —————————
                    Profits...........................................$20,474 64
                    One-fifth interest................$ 4,094 92
                    One-fourth interest............  5,118 66
                    J. M. Ivy.........................  11,261 06—$20,474 64

The plaintiff's interest being one-fourth of the estimated balance of the assets, amounting to $5,118.66, was credited to him on the books of the new firm. On the 1st of January, 1872, the plaintiff and R. Thomas May retired from the firm.

After the dissolution on the 1st of January, 1871, it was ascertained that the statement made on that day was erroneous, and that the liabilities of the firm exceeded the amount of the assets by near $100.

The defendants refused to pay the plaintiff, and thereupon, on the 22d July, 1872, this action was brought to recover from the defendants the sum of $5,118.66, less the sum of $2,049 due by the plaintiff to the firm. The case was referred to a Referee, who reported that R. T. May, when he retired from the firm, was discharged from all liability for the debt claimed by the plaintiff to be due to him and all other debts of the firm. He also reported the facts of the case, and held that the plaintiff was not entitled to recover.

The plaintiff filed the following exceptions to the Referee's report:

Because it is submitted that said Referee has erred in this, to wit:

1. That he decided that there was nothing due the plaintiff, as claimed in his complaint.

2. That he decided that the statement made, as in Exhibit A, of the interest of each partner in the firm of J. M. Ivy & Co., was wholly erroneous and unreliable.

3. That he thereby decided that the settlement had between the parties on the 1st of January, 1871, was not final and conclusive and binding on all the parties to the same.

4. That there was no mistake in said final settlement such as to justify the finding of said Referee upon the testimony submitted.

5. That there was misrepresentation and concealment on the part of James M. Ivy, the defendant, to the plaintiff, and that said defendant could take no advantage of the same; and the Referee erred in giving the said defendant the benefit of said misrepresentation and concealment.

6. That the Referee erred in deciding that the statement of the assets and liabilities of the firm of J. M. Ivy & Co., formed in August, 1869, and dissolved in January, 1871, and the ascertainment of the interest of each partner at the latter date was not the inducement held out by James M. Ivy to the plaintiff to become a member of the new firm, formed on the 1st of January, 1871; and that, therefore, the former was bound by the same.

7. That the Referee erred in deciding that the alleged error in the final settlement and declaring the interest of each partner could be rectified after so long a period and after the dissolution of the firm.

The decree of the Circuit Court is as follows:

MACKEY, J. This case was heard by me at the York Court, April Term, 1875. The hearing was on the report of the Referee and exceptions thereto by the plaintiff. In arriving at a decision, I do not think it necessary to consider the first two grounds, strongly maintained by the learned counsel for the plaintiff, to wit, that the defendants have taken credit for debts of the firm, which were covered by drafts on B. R. Smith & Co., for which drafts they also take credit; and that no allowance has been made by the Referee for the large sum drawn out of the assets of the firm by J. M. Ivy over and above his proportionate share. The determination of the case does not require that I should consider these grounds; and, moreover, they are not consistent with the main position taken by the plaintiff, viz., that all parties are concluded by the adjustment made January 1st, 1871, and their long acquiescence therein. If this position were not tenable, then it would be important to inquire into the alleged errors in the statement of the account between the parties.

It appears from the evidence that Ivy, May and Roach entered into a copartnership, in August, 1869, with the firm style of J. M. Ivy & Co. That these copartners had an accounting, January 1st, 1871, of the assets and liabilities of the firm, for the purpose of forming a new partnership, into which the defendant, Allen Jones, was to be admitted. This accounting was had by Ivy, May, Jones and the plaintiff, they taking an inventory of the stock ; by Ivy furnishing a statement of the cotton business, and by a schedule of liabilities, which appears in the handwriting of Allen Jones. The defendant, Ivy, testifies that the plaintiff "had nothing to do with the books—that they were entirely under defendant's control."

At the settlement under consideration, therefore, Ivy and Jones being the best versed in the art of book-keeping, attended to the statement of the accounts, notes and liabilities. All engaged in this accounting were pecuniarily interested therein—the members of the old firm and Allen Jones—the latter because he was about to become a member of the new firm, composed of members of the old firm and himself. During the year 1871, Allen Jones attended to the keeping of the books and was an expert book-keeper. On this accounting, a balance was struck and the net assets of the firm were stated to be $25,864.38. Thereupon, the defendant, Ivy, stated the proportionate share of the plaintiff at $5,118.66, and the plaintiff was accordingly given credit for that amount by an entry on the books of the firm. The plaintiff testifies that he was induced to enter the new firm by the statement of the result of the accounting above set forth. The new partnership, under the firm title of J. M. Ivy & Co., continued during the year 1871, and was dissolved January 1st, 1872, by the retirement of Roach and May, the remaining partners, Ivy and Jones, continuing the business on their own account. On retiring from the firm, Roach demanded a final settlement, and was then informed for the first time that an enormous error had occurred in the accounting of January 1st, 1871, and instead of the firm having been worth then $25,864.38, as the stated result of that accounting, it was, in fact, worth nothing at that date, but, on the contrary was insolvent, its liabilities exceeding its assets by the sum of $85.86. Roach had been kept in ignorance of the discovery of this alleged error during the entire year 1871. It appears from the evidence that the entry in the books whereby Roach was credited with the sum of $5,118.66 as his proportionate share of the profits was erased therefrom with-

out his knowledge or consent by Ivy and Jones, after January 1st, 1872. Ivy and Jones both had ample opportunity during 1871 to discover any error in the statement of the accounts, especially one of so great a magnitude as that now alleged by them, involving as it did the solvency of a firm of high commercial standing and engaged in large and widely-extended business operations. The defendants, Ivy and Jones, allege, however, that the accounting had on the 1st January, 1871, and the statement based thereon were not intended as a final settlement between the members of the firm, and that the result as stated was only " an estimate." It does not appear to me that this view is supported by the evidence. The entry of a new member into a firm is *ipso facto* a dissolution of the old firm, and the former partnership as between its members ceased to exist from that instant.—Parsons on Partnership, § 407. The legal relations of the parties, as well as their mutual interests, required a final settlement on the formation of the new firm ; and I must therefore conclude, in the absence of positive evidence to the contrary, that they intended to do what was necessary to be done in the premises. Any accounting not intended to strike a settled balance, as between the firm and its respective members, was superfluous and meaningless. The plaintiff does not allege fraud on the part of the defendants ; yet the entire transaction on the part of the latter bears many of the indices of fraud and wears upon its face features that usually express bad faith. I am of the opinion that while the defendants would have been allowed to correct mistakes in the accounting of January 1, 1871, within a reasonable time, they cannot be allowed after more than a year has elapsed to set up such mistakes,—they having been, during that period, the special custodians of the books and papers of the firm, having every facility for the quick discovery of any error in the settlement and accounting. Their claim of exemption from liability is divested of all force in law or equity when it appears that the plaintiff was induced to continue in a profitless business upon the assumption that the accounting of January 1, 1871, was correct. This view is amply sustained by the authorities, among which I refer to the following adjudicated cases: *Brown* vs. *Howe,* 2 Barb., 594–5 ; *Taylor* vs. *Fleet,* 4 Bart., 96 ; *Dowes* vs. *Durfee,* 10 Bart., 215 ; *Lockwood* vs. *Thom,* 11 N. Y., 173–4 ; *Thomas* vs. *Barton,* 48 N. Y., 193 ; *Hager* vs. *Thomson,* 1 Black, 93.

The law upon the matter under consideration is also very ably laid down by the Supreme Court of this State in the late case of *McDow* vs. *Brown*, 2 S. C., 105, and post.

In support of my view herein, I also refer to 1 Story, Eq., 159; *Penny* vs. *Martin*, 1 Johns. Ch., 366; *Burden* vs. *McElmoyle*, Bailey Eq., 375; *Gilchrist* vs. *Martin*, Bailey Eq., 492; *Pratt* vs. *Wayman*, 1 McC. Ch., 156; *Murrell* vs. *Murrell*, 2 Strob. Eq., 148; *Durham* vs. *Wadlington*, 2 Strob. Eq., 258; 2 Parsons on Contracts, 793.

The plaintiff admits that the defendants are entitled to a credit of $2,049. This would leave a balance of $3,069.66 due the plaintiff on the first day of January, 1872. I have not considered the questions as to the plaintiff's share of the profits for the year 1871, for that question is excluded from the present case by the plaintiff having brought another action against J. M. Ivy, individually, to recover a stipulated sum on Ivy's guaranty.

The defendant, May, has retired from the firm, and all his liabilities have been assumed by the other defendants.

I do, therefore, adjudge and decree that the plaintiff do recover of the defendants, J. M. Ivy and Allen Jones, the sum of three thousand and sixty-nine dollars and sixty-six cents, ($3,069.66,) with interest thereon from January 1, 1872, and the costs of this action, to be taxed by the Clerk.

The defendants appealed on the following grounds:

1. In that His Honor held that the statement in Exhibit A was a final settlement and that there was an absence of positive testimony to the contrary.

2. In that His Honor held that defendants cannot be allowed to correct mistakes therein after more than one year had elapsed, and that they were concluded by said statement.

3. In that His Honor states that the plaintiff had been "kept in ignorance of the discovery of the alleged errors" during the entire year 1871, whereas the discovery was not made by the defendants until 1872.

4. In that His Honor held that the plaintiff was induced to continue in a profitless business upon the assumption that the accounting of 1st of January, 1871, was correct, and the defendants therefore liable.

5. In that His Honor decreed that plaintiff recover of the defendants the sum of $3,069.66 and interest from 1st January, 1872, and costs.

6. In that said decree is contrary to law and the evidence.

*Brawley & Wilson*, for appellant:

Contended upon the facts that the alleged settlement of January, 1871, was not intended to be final, and that the evidence conclusively established that it was erroneous. The statement, therefore, was neither an account stated nor an account settled; it was merely a rough estimate not intended to bind and not in law binding upon any of the parties. It follows that the statement cannot be made the basis of a recovery in this action.

Before there can be a recovery an account must be taken, and then, if there appears to be a balance in favor of the plaintiff, he may be entitled to judgment therefor. The following authorities were cited: Story Eq. Pl., § 798; *McDow* vs. *Brown*, 2 S. C., 105; *Chappedelaine* vs. *Dechenaux*, 4 Cranch, 306; Foub, vol. 1, p. 15; Story, §§ 521, 140; *Marshall* vs. *Collet*, 1 Y. & C. Exch., 238; Kerr on Mistake, p. 415; *Kelly* vs. *Solair*, 9 M. & W., 54; *Townsend* vs. *Crowdy*, 8 C. B., N. S., 477; *Gregory* vs. *Pilkinton*, 8 D. M. & G., 616; *Shand* vs. *Grant*, 15 C. B., N. S., 324; Kerr on Fraud and Mistake, 369; Story Eq. Jur., § 110; Jerrimy Eq. Jur., 2 Bk., 358; *Roche* vs. *Morgell*, 2 Sch. & Lef.; *Salkeld* vs. *Science*, 2 Besey, 107; *Gist* vs. *Gist*, Bailey Eq., 348; Story Eq. Pl., § 801; 2 Adob. Ellis, 292; *Pickard* vs. *Spears*, 6 Ad. & El.; 475; *Brewer* vs. *Boston*, 5 Met., 478; *Swan* vs. *North B. Co.*, 2 Hurl. & C., 175; *Bank of Ireland* vs. *Trustees of Louis Charities*, 5 L. C.; *Taylor* vs. *Fleet*, 4 Barb., 96; *Lockwood* vs. *Thorne*, 11 N. Y., 171; *Thomas* vs. *Bartow*, 48 N. Y., 193; *Hager* vs. *Thompson*, 1 Black, 80; *Penny* vs. *Martin*, 4 John. Ch., 566; *Burden* vs. *McElhnoyle*, Bail. Eq., 375; *Gilchrist* vs. *Martin*, Bail. Eq., 492; *Pratt* vs. *Weyman*, 1 McC. Ch., 156; *Durham* vs. *Waddington*, 2 Strob. Eq., 258; Story's Eq., §§ 521, 146, 155, 161; *McRae* vs. *Hollis*, 4 DeS., 122; *Brownwell* vs. *Brownwell*, 2 Bros. C. C., 62.

*Hamilton & Rion*, contra:

Contended that the statement was intended to be, and was, final and conclusive, and it was so decided by the Judge below as a question

of fact. They cited: *McDow* vs. *Brown*, 2 S. C., p. 95; 1 Fonb. Eq., p. 117; *Duchess of Kingston's Case*, 2 Smith Lead. Cas., 544 to 561; *Pickard* vs. *Sears*, 6 Ad. & El., 475; *Stephen* vs. *Baird*, 9 Cowen, 274; *Dewey* vs. *Field*, 4 Met., 384; *Presb. Congregation* vs. *William*, 9 Wend., 147; *Bushnell* vs. *Church*, 15 Cowen, 419; 2 Parsons on Cont., 793; 1 Green. Ev., 234; *Butler* vs. *Ardis*, 2 McC. Ch., 71; *Warden* vs. *Berts*, 2 McC. Ch., 73; *Dowe* vs. *Durfee*, 10 Barb., 215; *Bruen* vs. *Howe*, 2 Barb., 594; *Willis* vs. *Jernegan*, 2 Atk., 251; *Lockwood* vs. *Thorn*, 11 N. Y., 173; *Taylor* vs. *Fleet*, 4 Barb., 96; *Murry* vs. *Murry*, 2 Strob. Eq., 148; *Chubbuck* vs. *Vernon*, 42 N. Y., 437, 438; *Huger* vs. *Thompson*, 1 Black, 1 U. S., 80.

March 15, 1876. The opinion of the Court was delivered by

WILLARD, A. J. This being an action by a partner against his copartners, upon the copartnership agreement, the usual course was the statement of the copartnership account, either at large or to the extent demanded by the nature of the plaintiff's claim. It does not appear by the record that either party specifically demanded the taking of such an account. It seems to have been assumed that the right of the plaintiff to recover anything depended upon the construction proper to be put upon a statement made between the parties in January, 1871, by which the assets of the firm at that time are stated at $20,474.64. If this statement is to be regarded as a final accounting between the parties, then the plaintiff is entitled to recover something, to be ascertained. If, on the other hand, it was intended as merely a rough estimate subject to correction, then the right of the plaintiff to recover must fail altogether.

The occasion of making the statement in question was a change of copartnership theretofore existing between the parties to this suit by the admission of a new member, who is not a party. It is evident in the face of the statement that it was intended as an estimate alone. Two of the most important items, viz., the stock and liabilities, are put in round numbers. The stock is stated at $20,000 and the liabilities at $17,000. In addition, the accounts due to the firm appear to be stated without deduction for bad or doubtful. The evidence does not contradict this inference, apparent on the face of the statement.

The Circuit Judge in stating that errors appearing in the partnership accounts could not be corrected after the lapse of a year has stated too broad a proposition, and one wholly inapplicable to the case. It does not appear to be a question of error in the statement in question. That statement appears to have been merely an approximate estimate made for the purpose of representing on the books of the new copartnership the assets of the old firm as capital stock to the new one. It was a matter of course that as these assets were realized by the new firm they should go on the books at the amount realized, and that the members of the old firm should be debited with any deficiency or credited with any excess of value realized over the estimated value. There was, therefore, no correction to be made of the amount credited to the old firm as capital stock on the books until the stock and accounts were finally disposed of, or until their actual value was ascertained in some other way. This does not appear to have been done.

The judgment of the Circuit Court must be set aside and an account taken, if either party demands it, to be conformed to this judgment.

*Moses*, C. J., and *Willard*, A. J., concurred.